DYKEMA GOSSETT PLLC

Jeffrey R. Fine
1717 Main Street, Suite 4200
Dallas, Texas 75201
(214) 462-6455
(855) 230-2518 (Facsimile)
jfine@dykema.com
*Attorneys for RWT Spruce Bridge Finance Trust, a Delaware statutory trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**POUGHKEEPSIE DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| DIAMOND ELITE ALBUQUERQUE, LLC, | Case Number: 26-35494-kyp |
| Debtor. | |

**MOTION PURSUANT TO 11 U.S.C. § 543(d) TO EXCUSE THE STATE COURT
APPOINTED RECEIVER FROM TURNOVER**

TO THE HONORABLE KYU YOUNG PAEK UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, secured creditor RWT Spruce Bridge Finance Trust, a Delaware statutory

trust ("Lender"), by and through its undersigned attorneys, for its Motion Pursuant to 11 U.S.C. §

543(d) to Excuse the State Court Appointed Receiver from Turnover (the "Motion"), and states as

follows:

### I.    SUMMARY OF MOTION

1.    The Property[1] is currently held in the possession, custody, or control of the state

court appointed receiver (the "Receiver") and should not be required to be turned over to the

---

[1] The capitalized terms used herein carry the definition given to them in the Motion.

Debtor under section 543 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"). The Property (defined, *infra*, at ¶ 9), and specifically Rents, is not property of the Debtor, but property of the Receiver for the benefit of the Lender. In addition, Lender requests that the Receiver be excused from turnover pursuant to 11 U.S.C. § 543(d) because prior to filing for Chapter 11 bankruptcy, the Debtor mismanaged and improperly transferred the Property to the detriment of its creditors which ultimately led to the appointment of a Receiver 117 days before the Petition Date. Returning the Property back to the Debtor would facilitate fraud and create injustice.

## II.    RELIEF REQUESTED

2.    Movant, as primary secured creditor in this single asset real estate case, requests the Court, pursuant to 11 U.S.C. § 543(d)(1), after notice and hearing, excuse compliance by the Receiver with 11 U.S.C. § 543(a), (b)(1) and (b)(2). Specifically, Receiver Carl Klimowicz should be authorized to continue operating the Property, and be permitted to pay all just debts arising from operation of, and preservation of the Property, including resolution of seriously past-due real property taxes which are accruing substantial interest and penalties. Receiver Carl Klimowicz should also be relieved of compliance with § 543(b)(1) and (2), including turnover of any Property claimed by the Debtor, including Rents and bank account balances. Copies of any Receiver report or accounting submitted in the State Court Foreclosure Action may be filed in this Court in compliance with section 543(b)(2).

## III.   INTRODUCTION

3.   This is a single asset real estate case[2] involving a 162-unit apartment complex located in Albuquerque, New Mexico.  The Lender, movant herein, is owed approximately $38 million under a first priority mortgage.  As part of the Lender's foreclosure action in New Mexico, a Receiver was appointed 117 days prior to the bankruptcy filing.  The Receiver has been collecting all rents since January 2026, and is attempting to stabilize this grossly mismanaged property.  As part of the first priority mortgage, Lender was granted an absolute assignment of the rents and leases, and because of a laundry list of uncured defaults, the Debtor's license to collect and hold rents has been revoked and terminated.  The Debtor has no other source of revenue to fund this bankruptcy.  Lender is informed and believes that Debtor has no employees.  There are two individuals[3] asserting competing ownership rights in the Debtor and the apartment complex. The Debtor has no other property other than the apartment complex.  Pre-bankruptcy, there were numerous defaults, all of which are uncured and continuing, including a non-consensual, unauthorized transfer of the Property to another entity, and failure to pay hundreds of thousands in property taxes due for years 2023, 2024 and 2025.  There are mechanics liens on the property for unpaid services.  Lender asserts its fight with the Debtor, and whoever is determined to be in control of the Debtor, to foreclose is a two-party dispute already brought before a competent New

---

[2] Despite the fact that this is unquestionably a single asset real estate case, this special purpose limited liability company Debtor failed to check the appropriate box designating it so on its petition.  The Debtor also failed to attach any documentation of the alleged CRO's authority to file the case, and Lender reserves all rights to object.

[3] One of the competing putative owners has filed a number of single-asset real estate chapter 11 cases (including one in the Southern District of New York) that have been dismissed as bad faith filings. *See, e.g., In re: Diamond Elite 121, LLC* filed under Case No. 4:25-bk-05298 in the United States Bankruptcy Court for the District of Arizona.

Mexico state court, and this filing likely was initiated only to hinder and delay Lender's foreclosure of the Property and/or a recently state court-approved process by which the Receiver has been authorized to market the property for sale.[4] All disputes between the parties can be resolved in the state court case which has been underway for many months. Lender has been hindered and delayed because of this bare bones chapter 11 filing lacking authority.

## IV. JURISDICTION AND VENUE

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(A) and (E). Venue of this case and this Motion is proper pursuant to 28 U.S.C. §§1408 and 1409.

## IV. BACKGROUND

5. On or about March 1, 2022, CoreVest American Finance Lender LLC ("Original Lender") made a loan to Diamond Elite Albuquerque LLC (the "Debtor") in the original principal amount of $29,875,000.00 (the "Loan"), pursuant to a Loan Agreement dated as of March 1, 2022 (the "Loan Agreement"). The balance due on the Loan as of the filing of this Motion is not less than $37,797,314.47. Interest on the outstanding principal balance continues to accrue at the per diem rate of $11,986.14. No payment has been made on the Note since September 1, 2024. *See* Ex. 1-Declaration of Chris Sullivan (the "Ex. 1-Sullivan Decl.") attached and marked as Exhibit 1 and the exhibits attached thereto and incorporated herein by reference.

---

[4] This Motion is being filed along with Lender's Motion to Determine Rents are Not Property of the Estate and Lender's Motion to Dismiss.

6. The Loan is evidenced by a Secured Promissory Note dated March 1, 2022 made by the Debtor and initially payable to the order of Original Lender (along with the Allonges thereto, the "Note"). [Ex. 1-Sullivan Decl., Exhibit 2 thereto.]

7. Repayment of the Loan is secured by, *inter alia*, a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Deed of Trust") executed by Debtor as of March 1, 2022 encumbering real and personal property consisting of a 162-unit apartment complex, located in Bernalillo County, Albuquerque, New Mexico. The address of the property subject to the Deed of Trust (the "Real Property") is 3003 Transport Street SE, Albuquerque, New Mexico, 87106. The Deed of Trust was recorded in the real estate records of Bernalillo County, New Mexico, on March 2, 2022 under Document No. 2022021136. [Sullivan Decl., Exhibit 3 thereto.]

8. By the terms of the Deed of Trust, Debtor also irrevocably mortgaged, granted, conveyed, and assigned all of its interest in the Real Property, and any fixtures, buildings, or improvements located on, attached to, or used in or about the Real Property, to secure payment of the Loan. [Ex. 1-Sullivan Decl., Exhibit 3 thereto (Deed of Trust, Section 1.01(c) and (f).]

9. As further security for repayment of the Loan, Debtor granted, *inter alia*, a security interest in all furniture, furnishings, goods, equipment, inventory, or personal property (collectively "Personal Property") owned by Debtor located on, attached to, or used in or about the Real Property. [Ex. 1-Sullivan Decl., Exhibit 3 thereto (Deed of Trust, Section 1.01(e)-(g)).]

10. To further ensure repayment of the Loan, Debtor assigned all of its interest in the leases and rents related to the Real Property and Personal Property (the "Rents," together with the Personal Property and Real Property are collectively referred to as the "Property") to Original

Lender in the Deed of Trust.[5] Under New Mexico law,[6] Original Lender perfected its assignment of the Rents and leases by recording the Deed of Trust in the office of the Bernalillo County Clerk where the Real Property is located. N.M. Stat. Ann. §§ 14-9-1, 56-15-5(A). Debtor absolutely and unconditionally assigned to Lender all right, title and interest to all current and future Leases, Rents, Lease Guaranties and Bankruptcy Claims which effected an absolute, unconditional and immediate transfer of the Debtor's right to the Rents.[7] [Ex. 1-Sullivan Decl., Exhibit 3 thereto (Deed of Trust, Section 1.02(a).] When Original Lender perfected the assignment of Rents through recordation, Debtor was granted a revocable license (herein the "License") pursuant to which Debtor was allowed to collect Rents and to use such proceeds upon certain terms and conditions in the Deed of Trust, one of which was that the License would terminate upon the occurrence of an Event of Default.

11. Also in connection with the Loan, Yehoishiah Rubin ("Guarantor") executed and delivered to Original Lender a Guaranty dated as of March 1, 2022 (the "Personal Guaranty") pursuant to which Guarantor unconditionally and irrevocably guaranteed the full payment and performance of all of Debtor's obligations under the Note, including payment of all amounts due thereunder. [Ex. 1-Sullivan Decl., Exhibit 4 thereto.]

---

[5] An assignment of leases and rents may be contained in a New Mexico deed of trust or mortgage. N.M. Stat. Ann. § 56-15-4. Just so here.

[6] New Mexico enacted the Uniform Assignment of Rents Act, effective January 1, 2012. N.M. Stat. Ann. § 56-15-1 et seq. Under the Uniform Assignment of Rents Act, the operative perfection step is recordation. Upon recording, the security interest in rents is fully perfected. N.M. Stat. Ann. § 56-15-5(B).

[7] Deed of Trust, Section 1.02(a) states: "Trustor hereby absolutely and unconditionally assigns to Beneficiary all of Trustor's right, title and interest in and to all current and future Leases, Rents, Lease Guaranties and Bankruptcy Claims; it being intended by Trustor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only."

12. Guarantor is allegedly the sole member and owner of 100% of the membership interests of Diamond Equity Manager, LLC, which is the manager of Diamond Elite Albuquerque Member, LLC, which in turn is the sole member of the Debtor. Debtor has no property other than the Property subject to the Deed of Trust which consists of a single apartment complex located in Albuquerque, New Mexico.

13. The Loan Agreement, Note, Deed of Trust, Personal Guaranty, and all other documents further evidencing, securing, or executed in connection with the Loan are collectively referred to herein as the "Loan Documents."

14. The Loan and Loan Documents have been assigned several times since March 2022 from Original Lender ultimately to Lender via a series of assignments, amendments, and endorsements, as detailed in the Ex. 1-Sullivan Declaration and attached as exhibits thereto. The Ex. 1-Sullivan Declaration and the exhibits attached to this Motion are incorporated herein by reference.

15. The Loan matured on September 1, 2024.

16. Debtor defaulted on its obligations under the Loan Documents beginning in 2024, if not earlier. Debtor's Events of Default under the Loan Documents include, but are not limited to, the following:

a. In violation of Sections 2.5.3 and 8.1.1 of the Loan Agreement, the Debtor failed to pay all amounts due under the Loan Documents on the Maturity Date of September 1, 2024;

b. In violation of Sections 6.12 and 8.1.2 of the Loan Agreement, the Debtor failed to pay the real property taxes on the Real Property for the years 2023 and 2024 and such taxes remain unpaid, incurring substantial interest and penalties;

c. In violation of Sections 6.1.6, 7.2.1, 7.7, 8.1.13, 8.1.21, and 8.1.31 of the Loan Agreement, the Debtor has allowed and permitted: (a) Safeco Corp. to record a Lien Claim – (General Contractor/Private) against the Real Property on May 2, 2025 as document number 2025037157; and (b) American Maid LLC to record a New Mexico Mechanic's Lien against the Property on June 26, 2025 as document number 2025052207; and

d. In violation of Sections 7.2.1, 8.1.13, and 8.1.21 of the Loan Agreement, and without Lender's knowledge or consent, Debtor conveyed the Real Property to Unique Green Space ABQ, LLC, an Arizona limited liability company, via a Special Warranty Deed recorded on March 27, 2025 as document number 2025023466.

(the "Defaults").

17. Debtor and Guarantor were given written notices on August 5, 2025 and August 22, 2025 of the Defaults and liability under the Guaranty. [Ex. 1-Sullivan Decl. Ex. A, Exhibits 31 and 32 thereto.]

18. Debtor's Defaults under the Loan Documents remain uncured and the License has terminated.

19. Both the Deed of Trust and New Mexico law provide that, upon the occurrence of an Event of Default, Lender is authorized to seek appointment of a receiver to enter upon and take and maintain full control of the Property and any Rents. *See* Deed of Trust, §§ 1.02(b), 6.01(i); N.M. Stat. Ann. § 56-15-7 (2025).

## V. STATE COURT RECEIVERSHIP

20. Due to Debtor's Defaults under the Loan Documents, on September 16, 2025 Lender[8] filed a Complaint for foreclosure in the Second Judicial District Court of New Mexico, in Bernalillo County under Case No. D-202-CV-2025-08342 (the "Foreclosure Action"). [Ex. 2-Klimowicz Decl. **Ex. A** thereto.] Debtor, Guarantor and Unique Green Space ABQ, LLC[9] were each named as defendants therein.

21. By Order dated November 3, 2025, the Court presiding over the foreclosure action substituted Lender as the Plaintiff in the Foreclosure Action. [Ex. 2-Klimowicz Decl. **Ex. C** thereto.]

22. On November 7, 2025, Lender filed a Verified Motion for Appointment of Receiver (the "Receiver Motion"). [Ex. 2-Klimowicz Decl. **Ex. D** thereto.]

23. On December 10, 2025, in response to the Receiver Motion, the Debtor, Guarantor, and Shlomtzi Mirl Rubin submitted a Stipulation to Appointment of Receiver stipulating to the appointment of an independent receiver with no objection to the specific receiver proposed. [Ex. 2-Klimowicz Decl. **Ex. E** thereto.]

24. Based on, *inter alia*, the Receiver Motion and Stipulation to Appointment of Receiver made by the Debtor, Guarantor, and Shlomtzi Mirl Rubin, the District Court granted the Receiver Motion and entered the Stipulated Order Appointing Receiver on January 8, 2026. [Ex. 2-Klimowicz Decl. **Ex. F** thereto.] Because the Deed of Trust specifically provides for the

---

[8] By Order dated November 3, 2025, the Court presiding over the foreclosure action substituted Lender as the Plaintiff in the Foreclosure Action. [Klimowicz Decl. **Ex. C** thereto].

[9] Unique Green Space ABQ, LLC is controlled by Joseph Grunhut, one of the two competing managers of the Debtor. *See, infra* paragraphs 42-48.

appointment of a receiver, Lender was entitled to have a receiver appointed as a matter of right pursuant to N.M. Stat. Ann. § 44-8-4(A) (1978).

25.     While recordation of an assignment of rents perfects a lender's interest in rents under New Mexico law, appointment of a receiver constitutes *enforcement* of such perfected rights under New Mexico law. Lender enforced the Assignment of Rents pursuant to N.M. Stat. Ann. § 56-15-7 (D) (2025) effective on the date on which the District Court entered the order appointing a receiver for the Real Property, Carl Klimowicz of the Glass Ratner firm (the "Receiver"). From the date of his appointment on January 8, 2026, the Receiver is entitled to collect rents as provided in Subsection B of Section 6 [56-15-6 NMSA 1978] of the Uniform Assignment of Rents Act.[10]

26.     The Receiver thereafter executed his Consent to Appointment as Receiver as required under New Mexico law. [Ex. 2-Klimowicz Decl. **Ex. F** thereto.] Upon approval of the Order Appointing Receiver, the Receiver took over the Property with the assistance of a property management team, GR MMG JV, LLC. Since the Debtor's License to collect and hold Rents was revoked and terminated on or before January 8, 2026, and pursuant to the Stipulated Order Appointing Receiver, the Receiver continues to collect all Rents generated from the Property, and

---

[10] N.M. Stat. Ann. § 56-15-6 (2025)

A. An assignee may enforce an assignment of rents using one or more of the methods specified in Sections 7, 8 and 9 [56-15-7, 56-15-8 and 56-15-9 NMSA 1978] of the Uniform Assignment of Rents Act or any other method sufficient to enforce the assignment pursuant to any law of New Mexico other than that act.

B. From the date of enforcement, the assignee or, in the case of enforcement by appointment of a receiver pursuant to Section 7 of the Uniform Assignment of Rents Act, the receiver is entitled to collect all rents that:

(1) have accrued but remain unpaid on that date; and

(2) accrue on or after that date, as those rents accrue.

the Rents are not property of the Debtor or the Debtor's estate.

27.     As detailed in the Receiver's reports in the Foreclosure Action, the Receiver discovered mishandling of the Property by the Debtor such as:

a. Most of the amenities, such as the pool, hot tub, fire pits, steam room, sauna, and arcade room are out of service or otherwise not operational; [Ex. 2-Klimowicz Decl. **Ex. J** thereto.]

b. Prior management operated without a valid license; [Ex. 2-Klimowicz Decl. **Ex. J** thereto.]

c. Units were rehabbed by prior management not in compliance with applicable building codes; [Ex. 2-Klimowicz Decl. **Ex. J** thereto.]

d. The security vendor threatened to terminate services due to nonpayment placing the Property at risk of criminal activity; [Ex. 2-Klimowicz Decl. **Ex. J** thereto.]

e. Property taxes were delinquent for the 2023, 2024, and 2025 tax years and the Property is at risk of being transferred to state collections; [Ex. 2-Klimowicz Decl. **Ex. H** thereto.]

f. Short-term rentals to non-eligible tenants were permitted by the Debtor [Ex. 2-Klimowicz Decl. **Ex. I** thereto.]

28.     Since taking over the Property, the Receiver has taken the following remedial actions, among other things, for the benefit of the Property and the Receivership estate:

a. All utility accounts have been transferred to the Receiver's name and all past due amounts have been paid; [Ex. 2-Klimowicz Decl. **Ex. H** thereto.]

b. Past-due rent owed from delinquent tenants has been reduced; [Ex. 2-Klimowicz Decl. **Ex. H** thereto.]

c. Lease renewals have been secured in order to retain occupancy; [Ex. 2-Klimowicz Decl. **Ex. J** thereto.]

d. Maintenance repairs have been made, are scheduled to occur, or are identified to be made; [Ex. 2-Klimowicz Decl. **Ex. H** thereto.]

e. A bank account has been opened in the Receiver's name used for depositing rental income and paying operating expenses for the Property. [Ex. 2-Klimowicz Decl. **Ex. H** thereto.]

## VI.     THIS BANKRUPTCY

29.     On May 6, 2026 (the "Petition Date"), Debtor, by and through Avraham Majer as the Debtor's alleged Chief Restructuring Officer, filed a Voluntary Petition for Relief under chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy"). [ECF No. 1.][11]

30.     The Receiver has been in possession of the Property since January 8, 2026, or for 117 days prior to the Petition Date. In response to the Debtor's Bankruptcy, Lender files this Motion.

## VII.     MEMORANDUM OF AUTHORITIES

**A.     The Property held by the Receiver is not property of the Debtor or the Debtor's Estate**

31.     Subject to certain exceptions under Bankruptcy Code sections 543(d)(1) and (d)(2) discussed *infra*, Bankruptcy Code Section 543 requires a custodian to deliver to the debtor in possession property that is in its possession, custody, or control on the date that the custodian acquires knowledge of the commencement of the case. 11 U.S.C. § 543(b)(1). The Property held by the Receiver, specifically Rents, is not property of the Debtor or Debtor's estate subject to turnover because the Debtor lost its prepetition title to the rents when its license was terminated

---

[11] Lender reserves all rights to seek dismissal of this case as an unauthorized filing.

when the Receiver was appointed pursuant to the Deed of Trust. *In re Soho 25 Retail, LLC*, 2011 Bankr. LEXIS 1257, at \*27 (Bankr. S.D.N.Y. 2011) ("the rents are not property of the estate because the Debtor had, at most, a revocable license in the rents at issue—a license that was revoked by the Lender prior to the Petition Date—and because the Mortgage and the Note remain unsatisfied."). The court in *In re Soho 25 Retail* found that the lender took the affirmative step pre-petition of causing the appointment of a referee, which constituted a termination of the revocable license the debtor had to collect rent.

32. As in *In re Soho 25 Retail*, the Debtor in the instant case had a revocable license in Rents and just as in *In re Soho 25 Retail*, Lender in the instant case terminated that license pre-petition after Debtor's default, by causing the Receiver to be appointed. In the Deed of Trust, Debtor "absolutely and unconditionally" assigned all rental income from the Property to Lender until the loan is paid in full, and Lender granted Debtor a revocable license to collect and receive the rents, but only so long as no Event Default occurred or was occurring. [Ex. 1-Sullivan Decl. Ex. A, Exhibit 3 thereto (Deed of Trust, Section 1.02(a)).] Pursuant to the Deed of Trust, during and after the occurrence of an Event of Default, Debtor "authorizes and directs the lessees named in the Leases…to pay over to [Lender] or to such other party as [Lender] directs all Rents and all sums due under any Lease Guaranties, upon such lessee's receipt from [Lender] of written notice to the effect that [Lender] is then the holder of this assignment." [Ex. 1-Sullivan Decl. Ex. A, Ex. 3 thereto (Deed of Trust, Section 1.02(b)).] Further, under Section 1.01(h)(vi) of the Deed of Trust, upon an Event of Default, Lender may, whether itself or through the appointment of a receiver, enforce the assignment of rents by entering upon and taking and maintaining full control of the Property. Upon appointment in the Foreclosure Action, the Receiver began collecting Rent in a separate bank account since January 2026.

33. The Debtor may only collect Rents under Section 543 if those rents are determined to be property of the debtor under applicable non-bankruptcy state law. *Rodriguez v. FDIC*, 589 U.S. 132 (2020) (property rights in bankruptcy are generally determined by state law, even when the dispute arises in the context of federal bankruptcy law) ); *Taub v. Taub* (*In re Taub*), 427 B.R. 208, 219 (Bankr. E.D.N.Y. 2010) (stating that "[w]hether or not a debtor has an interest in property sufficient to bring it within the ambit of 'property of the estate' is determined by state law or other applicable nonbankruptcy law"), aff'd, *In re Taub*, 2011 U.S. Dist. LEXIS 36476, 2011 WL 1322390 (E.D.N.Y. Mar. 31, 2011); *In re Dreier LLP*, 429 B.R. 112, 125 (Bankr. S.D.N.Y. 2010) (stating that absent an overriding federal policy, "[s]tate law or other applicable non-bankruptcy law normally determines the extent of the debtor's interest in property"). Under New Mexico law, applicable to the Deed of Trust, Lender's right to the Rents will become absolute if the Debtor defaults and the Lender takes sufficient steps pre-petition to enforce its interest in the Rents. Here, Debtor contractually agreed in Section 1.02(a) of the Deed of Trust that "this assignment constitutes a present, absolute assignment and not an assignment for additional security only." Not only was Debtor's assignment of Rents to Lender in the Deed of Trust "absolute and unconditional," Lender also took affirmative steps pre-petition to enforce the assignment – namely, causing the Receiver to be appointed, who then opened his own bank account in which Rents have been and continue to be deposited. [Ex. 2-Klimowicz Decl. **Exs. H, I, and J** thereto.] *See Soho 25 Retail,* 2011 Bankr. LEXIS 1257, 2011 WL 1333084, at *7. Therefore, Lender's assignment of Rents is "absolute," and not given for security purposes. *Federal Home Loan Mortg. Corp. v. Dutch Lane Assocs.*, 775 F. Supp 133 (S.D.N.Y. 1991); *In re Loco Realty Corp.*, 2009 Bankr. Lexis 1724, at *16 (Bankr. S.D.N.Y. 2009). The commencement of the Foreclosure Action, appointment of the Receiver, and the pre-petition collection of Rents are more than sufficient

affirmative steps taken by Lender to divest the Debtor of all of its interests in the Rents. *See Soho 25 Retail,* 2011 Bankr. LEXIS 1257, 2011 WL 1333084, at *7 ("[A]ffirmative steps can include: requesting the appointment of a receiver to collect the rents, demanding or taking possession, commencing foreclosure proceedings, or seeking an order for the sequestration of rents. Notably, the case law lists these examples of affirmative steps in the disjunctive." (citations omitted)).

34.     Because the Debtor's interest in Rents terminated pre-petition, upon the commencement of the bankruptcy case, those Rents are not property of the estate of the Debtor. *In re South Side House, LLC*, 474 B.R. 391, at 407 (citing *First Fid. Bank v. Jason Reality, L.P.* (*In re Jason Realty*, L.P.), 59 F.3d 423, 425-427 (3d Cir. 1995) (finding that under an absolute assignment, debtor did not have an ownership interest in rents and the rents were not property of the estate)); *Loco Realty*, 2009 Bankr. LEXIS 1724, 2009 WL 2883050, at *5-6 (holding that under an absolute rent assignment, creditor held prepetition title to rents, and the rents could not be used to fund the debtor's Chapter 11 plan); *R.A. Hendrickson Real Estate, Inc. v. Weisman* (*In re R.A. Hendrickson Real Estate, Inc.*), 395 B.R. 565, 579-80 (Bankr. E.D.N.Y. 2008) (finding that debtor had a right of redemption, but not an interest in the rents, where creditor's tax lien and treasurer's deed served to terminate debtor's title to the property).

35.     Because the Debtor's interest in the Rents terminated pre-petition, post-petition proceeds generated from the Property are likewise not property of the estate. 11 U.S.C. § 541(a)(6); *First Fid. Bank v. Jason Reality, L.P.* (*In re Jason Realty*, L.P.), 59 F.3d 423, 425 (3d Cir. 1995); *Commerce Bank v. Mt. View Vill.*, 5 F.3d 34, 38 (3d Cir. 1993); *and  Jefferson-Pilot Invs., Inc. v. Cottonwood Phase V, LLC*, 2017 N.M. App. Unpub. LEXIS 243 (N.M.App. 2017) (post-petition bankruptcy proceeds governed by absolute assignment of rents).

**B. If the Property, Including the Rents, is determined to be property of the Debtor, the Receiver should be excused from turnover under Section 543(d) of the Bankruptcy Code**

36. Under Sections 543(d)(1) and (2), compliance under Section 543(a) and (b) may be excused if (1) "the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property" or (2) shall be excused if "the custodian is an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, unless compliance with such subsections is necessary to prevent fraud or injustice.".

37. Section 101(11) of the Bankruptcy Code defines "custodian" as:

> (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;
>
> (B) assignee under a general assignment for the benefit of the debtor's creditors; or
>
> (C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed to authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

11 U.S.C. § 101(11).

38. The Receiver was appointed in the Foreclosure Action by a New Mexico district court pursuant to state law, not under Title 11. Thus, the Receiver qualifies as a "custodian" within the meaning of Subsection (A) of Section 101(11) of the Bankruptcy Code. *See, e,g.*, *Barnard v. Frank* (*In re Lynch*), Nos. 15-74795 (AST), 18-08169 , 2021 Bankr. LEXIS 1155 (Bankr. E.D.N.Y. Apr. 30, 2021) (noting that the Court "has statutory authority under Section 543 to excuse or condition the receiver's noncompliance with Sections 362, 542, and 543"); *Lamplight Condo. Ass'n v. Boardwalk Realty Assocs., LLC* (*In re Lamplight Condo. Ass'n*), No. 17-20078, 2017

Bankr. LEXIS 1228 (Bankr. D. Conn. May 5, 2017) ("the Receiver became a custodian under 11 U.S.C. § 101(11)(A) at the time the Debtor's Chapter 11 case was filed"); *In re* 318 *Retail, LLC*, 642 B.R. 884, 888 (Bankr. N.D. Ill. 2022) ("Receivers appointed by state courts are custodians pursuant to § 101(11)").

39. As detailed below, the Receiver's compliance with Section 543(a) and (b) should be excused and the Receiver should remain in possession of the Property.

**C.    Compliance should be excused under Section 543(d)(1)**

40. The Court should excuse the Receiver and order the Receiver to remain in possession of the property, custody, or control under the permissive provision of Section 543(d)(1)[12] in order to prevent further mismanagement.

41. Under Section 543(d)(1), the Court may excuse compliance with subsections (a) and (b) if "the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property." When determining whether to excuse a receiver from the turnover provisions of section 543, courts look at (1) "whether there will be sufficient income to fund a successful reorganization," (2) "whether the debtor will use the property for the benefit of its creditors," and (3) "whether there has been mismanagement by the debtor." 5 COLLIER ON BANKRUPTCY ¶ 543.05 (16th ed. 2026).

---

[12] There is an argument to be made under section 543(d)(2) since the Debtor consented to the appointment of a receiver in the Foreclosure Action [Klimowicz Decl. **Exs. E and F** thereto], Debtor "expressly consents to any such appointment" of a receiver in the Deed of Trust [Sullivan Decl. Ex. A, Ex. 3 thereto (Deed of Trust, Section 13.05).], and the Receiver was appointed 117 days before the Petition Date in order to prevent fraud or injustice; however, sufficient grounds exist for granting 543(d)(1) relief.

42. Here, there is clear mismanagement by the Debtor of the Property when controlled by both Guarantor and Unique Green Space ABQ, LLC. Prior to the receivership, the Debtor failed to pay several years of property taxes owed for the Property, failed to pay key vendors, allowed liens to be placed on the Property, and failed to pay off the Loan at maturity, almost two years ago.

43. Upon information and belief, the Guarantor collected Rent from tenants and used the Property as his personal piggy bank. Property taxes have been delinquent since 2023 which have placed the Property in jeopardy of loss due to a tax sale or to be referred by Bernalillo County to the State for collection. Debtor discontinued the cable and internet provider yet kept the Debtor obligated as landlord to pay for tenants' cable and internet services. Marketing services had been cancelled and discontinued payment of the security vendor caused the Property to be at risk of criminal activity. [Ex. 2-Klimowicz Decl. **Exs. J and K** thereto]

44. Then, in August 2024, Guarantor inexplicably caused the Debtor to convey the Real Property to Unique Green Space ABQ, LLC violating the terms of the Loan Documents. While the Property was under control of Unique Green Space ABQ, LLC, its principal, Joseph Grunhut, caused twelve (12) soon-to-be expired leases to not be renewed with the intention of remodeling these units. [Ex. 2-Klimowicz Decl. **Ex. K** at ¶ 10-12.] Non-compliant and illegal renovations were made to five units in violation of local building codes. [Ex. 2-Klimowicz Decl. **Ex. K** at ¶ 22.] The Debtor's business license also lapsed on April 18, 2025 and was not renewed, and now, renewal cannot be obtained because the Property will not pass inspection. [Ex. 2-Klimowicz Decl. **Exs. J and K** thereto] Debtor's inability to maintain the Property raises concerns that the value of the Property will diminish and warrants granting relief to Lender.

45. There is an internecine fight to control the Debtor - between the Guarantor, who has filed multiple single asset real estate bankruptcies found to be filed in bad faith, and Joseph

Grunhut, the owner of Unique Green Space ABQ, LLC, who badly mismanaged the Property when he controlled it for fourteen (14) months from August 2024 through October 2025. [Ex. 2-Klimowicz Decl. **Ex. J** at page 4.] Debtor has shown a complete lack of trustworthiness, willingness to cooperate, transparency, and truthfulness. Not only would excusing turnover *not* result in injustice or fraud but turning the Property over to Debtor – whether the Debtor is controlled by Guarantor or Grunhut – would result in injustice and/or fraud.

46. The Court may excuse turnover because the interest of Debtor's only secured creditor, Lender, the party with the most significant interest in the Property, would be far better served by permitting the Receiver to remain in place and not allowing the Property to be subjected to Debtor's mismanagement again. *See, e.g.*, *In re Princeton Square Associates, L.P.,* 201 B.R. 90, 95 (Bankr. S.D.N.Y. 1996). The Debtor's bankruptcy filing is a bad faith filing as demonstrated in Lender's Motion to Dismiss filed concurrently herewith and there is zero reason to believe Debtor will not waste the estate, comingle funds, or otherwise diminish the value of the Property and thus the value of Lender's collateral.

47. Debtor's only asset and only source of income is the Property. Debtor has no other assets to utilize for a reorganization, and Debtor has not made a payment at least since the Loan matured, despite the Property operating at 89% occupancy.

48. Lender is the only secured creditor in this action. The Debtor permitted substantial property taxes to fall delinquent, and continued delay will cause significant additional tax liabilities to accrue at default interest rates and statutory penalties, increasing the financial burden to the detriment of the estate and its creditors. The Receiver should remain in place in order to prevent the growing tax obligation from diminishing the estate.

49. Further, the Debtor is a single asset real estate. Debtor is required, under the Section 6.8.3 of the Loan Agreement, to conduct and operate its business as such and is prohibited from engaging in any business other than the acquisition, construction, ownership, management, and operation of the Property. [Ex. 1-Sullivan Decl., Sections 5.1.1, 5.19, and 6.8 in Ex. 1 thereto.] The express inclusion of this provision evidences the importance at loan origination of Debtor's status as a single-asset real estate entity. Because "the collection of rents could serve no meaningful purpose other than to be applied toward this obligation," the Receiver should remain in place and be permitted to continue collecting rents from the Property. *In re CCN Realty Corp.*, 19 B.R. 526, 529 (Bankr. S.D.N.Y. 1982).

50. For the reasons detailed herein, the Receiver is the right party to remain in possession of the Property. Debtor has not and will not cooperate with Lender, its secured creditor. All of Debtor's prior actions under the control of the two competing managers as described above indicate a willingness to deceive Lender, the Receiver, and the Courts in order to personally benefit those in control of the Debtor. Lender thus requests that the Court excuse the Receiver from turnover of the Property. In the alternative, a chapter 11 trustee should be appointed to act in the best interest of the creditors and the estate.

## VIII.  RELIEF REQUESTED

WHEREFORE PREMISES CONSIDERED, RWT Spruce Bridge Finance Trust, a Delaware statutory trust, respectfully requests the Court, pursuant to 11 U.S.C. § 543(d)(1), after notice and hearing, excuse compliance by the Receiver with 11 U.S.C. § 543(a), (b)(1) and (b)(2). Specifically,  Receiver Carl Klimowicz should be relieved of all restrictions on his actions under § 543(a) and instead, continue operating the Property, and be permitted to pay all just debts arising from operation of, and preservation of the Property, including resolution of seriously past due real

property taxes which are accruing substantial interest and penalties. Receiver Carl Klimowicz should also be relieved of compliance with § 543(b)(1) and (2), including turnover of any Property claimed by the Debtor, including Rents and bank account balances, and should be permitted to file copies his state court Receiver reports submitted in the Foreclosure Action to be filed in this Court in compliance with 543(b)(2). RWT Spruce Bridge Finance Trust, a Delaware statutory trust, requests the Court grant the relief requested in this Motion, together with such other and further relief as the Court deems just and proper.

Dated:  May 22, 2026    Respectfully submitted,

DYKEMA GOSSETT PLLC

By:  */s/ Jeffrey R. Fine*
Jeffrey R. Fine
New York Bar No. 5276225
Texas Bar No. 07008410
1717 Main Street, Suite 4000
Dallas, Texas  75201
(214) 462-6455
(855) 230-2518 (Facsimile)

**ATTORNEYS FOR RWT SPRUCE BRIDGE FINANCE TRUST, A DELAWARE STATUTORY TRUST**